**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CALVIN GLOVER** | ) | |
| | ) | **No. 16 C 5607** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Michael T. Mason** |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the U.S. Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Claimant Calvin Glover seeks judicial review under 42 U.S.C. § 405(g) of a final

decision of Defendant Commissioner of the Social Security Administration ("SSA")

terminating his Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act (the "Act").  The parties have consented to the jurisdiction of the United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons that follow,

Claimant's motion to reverse the final decision of the Commissioner or remand [17] is

granted and the Commissioner's motion for summary judgment [24] is denied.

## I.  BACKGROUND

### A.  Procedural History

Claimant was born October 25, 1993, and received SSI as a child due to a

disability.  (R. 23.)  As required under the Act, Claimant's eligibility for SSI was re-

evaluated under the rules for determining adult disability when he attained the age of

eighteen.  *See* 42 U.S.C. § 1382c(a)(3)(H)(iii).  On April 25, 2012, the SSA determined

that Claimant was no longer disabled as of April 1, 2012.  (R. 23.)  This decision was

upheld upon reconsideration on March 4, 2013. (R. 90–92; 99–109.) Following both denials, Claimant filed a hearing request on March 11, 2013, pursuant to 20 C.F.R. § 404.929 *et seq.* (R. 114–16.) A hearing was held on June 3, 2014 before an Administrative Law Judge ("ALJ"). (R. 139.) After he was informed of his right to representation, Claimant appeared at the hearing without the assistance of an attorney or other representative. (R. 36–89.) A Vocational Expert ("VE") was also present and offered testimony. (R. 82–88.) On December 4, 2014, the ALJ issued a written decision denying Claimant's SSI claim. (R. 23–31.) Claimant then requested review by the Appeals Council. (R. 13–14; 17–19.) On April 8, 2016, the Appeals Council denied his request for review, at which time the ALJ's decision became the final decision of the Commissioner. (R. 1–7); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed this action in the District Court.

## B. Medical Evidence

The medical records reflect that between 2007 and 2012 Claimant sought treatment at Christian Community Health Center for asthma, back pain, and other general health issues. (R. 336–61; 397–407.) He was treated with Albuterol for his asthma, and on at least one occasion, ibuprofen for his back pain. (R. 399–400.) In April 2011, Claimant was examined by his school nurse who reported that he had a heart murmur, which did not affect his physical activity level, and asthma, which was controlled with an inhaler and did not impact his ability to attend school or participate in regular physical education. (R. 185–87.)

About one month later, Claimant was identified as a student with a learning disability and underwent a psychological evaluation performed by Carolyn Hall-Pilate, a

psychologist.  (R. 188–91.)  The examination revealed that Claimant had a full scale intellectual quotient ("IQ") of 77, placing him within the borderline range of intellectual functioning.  (R. 188.)

On March 3, 2012, Dr. Albert Osei, M.D., performed a consultative examination of Claimant at the behest of the Bureau of Disability Determination Services.  (R. 362–65.)  Claimant stated that he had suffered from asthma since childhood and used an inhaler when he engaged in physical activities such as mixed martial arts, running, and basketball.  (R. 362.)  Upon examination, Claimant's lungs were clear, he had full range of motion in all of his joints, and his mental status examination revealed that his behavior and ability to relate during the exam were normal.  (R. 363–64.)

One month later, Claimant underwent another consultative examination with Dr. Piyush Buch, M.D.  (R. 368–69.)  In his report dated April 5, 2012, Dr. Buch noted Claimant's history of disruptive behavior, including fighting, arguing, and "talking back." (R. 368.)  He diagnosed him with impulse control disorder.  (R. 369.)  After asking Claimant several cognitive and behavioral questions, Dr. Buch opined that Claimant was able to understand and remember instructions, but had difficultly carrying them out. (*Id.*)

Shortly afterward, on April 17, 2012, Dr. Donald Cochran, Ph.D., reviewed Claimant's records and performed a psychiatric review.  (R. 371–88.)  Dr. Cochran concluded that Claimant would be "markedly limited" in his ability to interact appropriately with the general public and understand, remember, or carry out detailed instructions.  (R. 385–86.)  He opined that Claimant would "do best" in settings that did

not require extensive social interaction, but that he would also have "some difficulty" working independently with usual supervision.  (R. 387.)

Two days later, Dr. Bharati Jhaveri, M.D., performed a physical residual functional capacity ("RFC") assessment of Claimant based on his records.  (R. 389–96.) Dr. Jhaveri found that Claimant had no postural, manipulative, vision, or communicative limitations, but limited him to work at a medium exertional level.  (R. 390–93).  He also noted that Claimant should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation due to his asthma.  (*Id.*)

On November 7, 2012, at the direction of Dr. Shari Davis, M.D., Claimant underwent an x-ray of his lumbar and cervical spines.  (R. 409.)  The results of both exams were unremarkable.  (*Id.*)  Claimant was also scheduled to undergo a CT scan of his thoracic spine, but it was cancelled.  (*Id.*)

On December 8, 2012, state agency medical consultant, Dr. Donna Hudspeth, Psy.D., completed an Advisory Psychiatric Review Technique form, in which she opined that Claimant's mental impairments did not meet a listing.  (R. 411–28.)  Dr. Hudspeth then completed a mental RFC assessment and found that Claimant's impairments imposed moderate limitations on his ability to maintain attention and concentration for extended periods of time, carry out, understand, and remember detailed instructions, work in coordination with or proximity to others without being distracted by them, complete a normal work day and work week without interruption, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others.  (R. 411–12.)  Similarly, she determined that Claimant would have moderate

difficulties in maintaining concentration, persistence, pace, and social function.  (R. 425.)  Ultimately, Dr. Hudspeth opined that Claimant retained the ability to understand, remember, and carry out at least simple, one- to two-step repetitive tasks, and that he could adequately adapt to work settings and routine changes, but that his work setting should limit his social demands.  (R. 413.)

Four days later, on December 12, 2012, Dr. George Andrews, M.D., a state agency medical consultant, completed a physical RFC assessment where he reported that Claimant had no exertional, manipulative, postural, or communicative limitations, but that he should "avoid even moderate exposure" to pulmonary irritants such as fumes, odors, and gases due to his history of asthma.  (R. 429–36.)

## C. Claimant's Testimony

Claimant appeared at his administrative hearing on June 3, 2014.  (R. 39–88.) After the ALJ advised Claimant of his right to representation, Claimant decided to proceed without the assistance of an attorney or other representative.  (R. 39–45.)

Claimant testified that he was born on October 25, 1993 and was twenty years old at the time of the hearing.  (R. 48.)  In terms of his education, Claimant stated that he had dropped out of high school during the first quarter of his senior year because "it started getting confusing" and there was too much pressure on him.  (R. 48–49.) Claimant explained that since he dropped out he had not attempted to obtain a high school equivalent education or enroll in any other courses.  (R. 49.)

Next, Claimant testified regarding his work history.  (*Id.*).  Claimant stated that he was hired in April 2013 as a porter at Burger King, where his job duties included sweeping, mopping, and lifting heavy boxes.  (R. 49–50.)  Claimant testified that he

could not perform the lifting requirement of his job due to his back pain, so he was later limited to just sweeping and mopping. (*Id.*) Claimant reported that he worked three hours per week for four months, but quit because he could not afford transportation to get to work. (R. 50–51; 56.) Beyond a two-month period of employment at McDonalds in 2012, Claimant stated he was unable to obtain other work because he did not have transportation or missed the orientation days. (R. 51–59.)

Claimant reported that he is primarily unable to work due to his back pain. (R. 60.) He stated that he has experienced back pain his entire life, but he never had the cause of the pain successfully investigated by a doctor. (R. 62.) He explained that he had scheduled a CAT scan on his back, but it was not completed due to a misunderstanding at the doctor's office where he left before the scan could be performed. (*Id.*)

Claimant testified that he still has asthma, which causes him sharp pains in his heart when he walks up stairs. (R. 66.) He stated that he treats his asthma with an inhaler. (*Id.*)

### D. Ms. Marie Glover's Testimony

Claimant's mother was present and she also testified at his administrative hearing. (R. 72–82.) After testifying generally to Claimant's history of asthma and back pain, Ms. Glover stated that in the previous two years, Claimant had visited Roseland Community Medical Center ("Roseland") on several occasions for his ongoing impairments, but she had been unable to obtain his records prior to the hearing. (R. 73–74.) The ALJ and Ms. Glover agreed that Ms. Glover would attempt to collect

Claimant's medical records from Roseland and submit them to the ALJ within 28 days of the close of the hearing. (R. 79–80.)

**E. VE Testimony**

Vocational expert ("VE") George B. Paprocki was present and testified at Claimant's administrative hearing. (R. 82–88.) First, the ALJ asked the VE whether jobs existed in the regional or national economy for a younger individual (as defined by the regulations), who had limited education, no past relevant work, was limited to simple, routine, and repetitive tasks free of fast-paced production rate requirements, and could occasionally interact with others including the general public, coworkers, and supervisors. (R. 84.) The VE answered that jobs were available in the national economy for such an individual, including, but not limited to, room cleaner, groundskeeper, and industrial cleaner. (R. 84–85.) Then, the ALJ asked the VE if the availability of the jobs he had listed would be eroded if the hypothetical individual was additionally limited to avoiding even moderate exposure to environmental irritants, such as fumes, odors, dust, gas, poorly ventilated areas, and chemicals. (R. 85.) The VE opined that the additional limitation would not impact the availability of the jobs he had listed because they only required "some" exposure to irritants which would not rise to a "moderate" level. (*Id.*) The VE explained that "occasional" encounters with irritants would constitute a "moderate" level. (R. 85–86.) Next, the ALJ asked if the jobs would remain available if the hypothetical individual was additionally limited to work at a medium exertional level, to which the VE responded affirmatively. (R. 86.) Finally, the VE testified that the individual would be precluded from the jobs he had listed, as well as all full-time employment, if the individual was additionally limited to no sustained

activity on a regular and continuing basis for eight hours a day, five days a week for a forty hour work week or an equivalent schedule. (*Id.*) In conclusion, the ALJ asked the VE if his testimony had been consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.*) The VE replied that it had. (*Id.*)

After the ALJ had completed his questions, Claimant did not elect to cross-examine the VE. (R. 87.)

## F. ALJ Determination

On December 4, 2014, the ALJ issued a written decision denying Claimant's SSI application after a finding that he is no longer disabled under the Act. As an initial matter, the ALJ found that Claimant had attained age eighteen on October 24, 2011 and that he was no longer considered disabled as of April 1, 2012 based on a redetermination of disability under the rules for adults who file new applications. (R. 25.) At step two, the ALJ found that Claimant is suffering from the severe impairments of asthma, impulse control disorder, and a history of learning disorder. (*Id.*) At step three, the ALJ determined that the Claimant did not have an impairment or a combination of impairments that meet or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 25–27.)

Next, the ALJ assessed Claimant's RFC and determined that he could perform a full range of work at all exertional levels except that he was limited to simple, routine, and repetitive tasks free of fast-paced production requirements; occasional interaction with others including the general public, coworkers, and supervisors; and avoidance of even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases, as well as exposure to poorly ventilated areas and chemicals. (R. 27–29.) In

making his RFC determination, the ALJ gave "great" weight to the opinion of State Agency consultant Dr. Andrews, who opined that Claimant had no exertional limitations, but should avoid even moderate exposure to pulmonary irritants, because he found that Dr. Andrews' assessment adequately accounted for limitations related to Claimant's asthma. (R. 28.) In contrast, he only gave "some" weight to the opinion of Dr. Jhaveri, who opined that Claimant could perform work at a medium exertional level and should avoid concentrated exposure to pulmonary irritants. (R. 28.) The ALJ found that the record did not support the level of exertional limitations suggested by Dr. Jhaveri because Claimant is able to participate in sports such as mixed martial arts, basketball, and running. (*Id.*)

In assessing Claimant's mental limitations, the ALJ gave great weight to the opinion of Dr. Buch. (R. 29.) Based on Dr. Buch's report, the ALJ limited Claimant to simple, routine, and repetitive tasks without fast-paced production requirements. (*Id.*) Likewise, he credited the opinions of Drs. Cochran and Hudspeth, who opined that Claimant could "understand and remember simple instructions" and "carry out at least simple, 1-2 step repetitive tasks." (*Id.*) He found that the opinions of the three doctors could be read together consistently. (*Id.*)

At step four, the ALJ determined that Claimant had no relevant past work. (R. 30.) However, at the final step, the ALJ determined that Claimant can perform jobs existing in significant numbers in the national economy, such as room cleaner, groundskeeper, and industrial cleaner. (*Id.*) Based upon his determinations, the ALJ opined that Claimant's disability ended on April 1, 2012 and that Claimant had not become disabled again since that date. (R. 31.)

## II. LEGAL ANALYSIS

### A. Standard of Review

Because the Appeals Council denied review, the ALJ's findings constitute the final decision of the agency. *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994). The findings of the ALJ as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g); *see also Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002); 42 U.S.C. § 1383 ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."). Although the court affords great deference to the ALJ, it must do more than merely rubber stamp the ALJ's decision. *Griffith v. Sullivan*, 916 F.2d 715 (7th Cir. 1990) (citing *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986)). In order to affirm the ALJ's decision, the court must find the decision to be supported by substantial evidence on the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). Substantial evidence is more than a mere scintilla; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kepple v. Massanari,* 268 F.3d 513 (7th Cir. 2001) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The court may not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that determination falls upon the

ALJ, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). An ALJ must articulate his analysis by building an accurate and logical bridge from the evidence to his conclusions, so that the court may afford the claimant meaningful review of the ALJ's ultimate findings. *Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2013). It is not enough that the record contains evidence to support the ALJ's decision, and the court must remand if the ALJ does not rationally and sufficiently articulate the grounds for that decision, so as to prevent meaningful review. (*Id.*)

## B. Analysis under the Social Security Act

When an applicant who is eligible for disability benefits as a child reaches age eighteen, the Commissioner must redetermine his eligibility by applying the criteria for determining initial eligibility for individuals who file new applications as adults. *See* 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987. Under the standard for adults, a claimant is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" 42 U.S.C. § 1382c(a)(3)(B). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has

the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

## III. DISCUSSION

Claimant now alleges that the ALJ made two errors at step five of the sequential evaluation process. First, Claimant argues that the ALJ's step five determination was not supported by substantial evidence because it was based on incomplete hypothetical questions posed to the VE. (Cl.'s Br. at 5–8.) Second, Claimant contends that the ALJ erred at step five because he failed to resolve apparent conflicts between the VE's testimony regarding pulmonary irritants and the information provided in the DOT. (Cl.'s Br. at 8–11.) Claimant also alleges that the Appeals Council erred when it determined that evidence submitted to it was not "new and material." (Cl.'s Br. at 11–14.) We examine each of the arguments in turn below.

### A. The ALJ Failed to Include Claimant's Limitations in Maintaining Concentration, Persistence, and Pace in the Hypothetical Questions He Posed to the VE.

First, Claimant argues that the ALJ's determination at step five of the sequential evaluation process was not supported by substantial evidence because the hypothetical questions posed to the VE did not account for all of his alleged impairments. (Cl.'s Br. at 6–8.) Specifically, Claimant alleges that the ALJ's questions to the VE were incomplete because they did not account for his mental limitations, including his limitations in concentration, persistence, and pace, and his limitation to one- to two- step tasks. (*Id.*)

### 1. Concentration, Persistence, or Pace

At step five of the sequential evaluation process, the Commissioner must demonstrate the existence of "significant numbers of jobs in the nation economy." 20 C.F.R. § 404.1545(a)(5)(ii). In doing so, an ALJ may rely on the testimony of a VE to whom he poses hypothetical questions that account for the claimant's age, education, work history and RFC. 20 C.F.R. § 404.1520(a)(1)(v), (g). In general, an ALJ is required to "orient the VE to the totality of a claimant's limitations," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (citations omitted), both physical and mental, that are supported by the medical evidence of record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (citations omitted). For the reasons that follow, we conclude that the ALJ's hypothetical questions to the VE did not properly include Claimant's limitations in concentration, persistence, and pace.

Claimant contends that the ALJ did not account for his limitations in maintaining concentration and persistence in the hypothetical questions he posed to the VE when he limited the hypothetical individual to "simple" tasks. (Cl.'s Br. at 7.) In response, the Commissioner argues that Claimant's limitations in concentration and persistence were not severe enough to warrant inclusion in the ALJ's hypothetical questions, therefore the ALJ committed no error. The Commissioner attempts to support her assertion by pointing to language in Dr. Hudspeth's assessment where she stated that Claimant had a diminished, but ultimately adequate, ability to adapt to workplace settings and routine changes. (Def.'s Mem. at 3-4.)

Despite the Commissioner's allegations, we cannot accept her argument under the *Chenery* doctrine, which forbids an agency's lawyers from defending the agency's

decision on grounds the agency itself did not embrace. *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Parker v Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). While the ALJ in this case did point to other parts of Dr. Hudspeth's opinion in his decision, he did not explicitly mention the portions cited by the Commissioner in her brief. In fact, the ALJ did not address Dr. Hudspeth's assessment of Claimant's limitations in connection with his concentration, persistence, and pace discussion at all. We must confine our review to the reasons articulated by the ALJ and cannot consider the Commissioner's post-hoc attempt to supplement the ALJ's assessment of the evidence. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2012); *see also Phillips v. Astrue*, 413 F. App'x. 878, 883 (7th Cir. 2010).

Furthermore, even if we were to accept the Commissioner's argument, the ALJ was still required to consider Claimant's limitations in concentration and persistence because they were supported by the medical record. Not only did Dr. Hudspeth opine that Claimant would have a diminished ability to adapt to workplace settings and routine changes, but the ALJ himself determined that Claimant suffered moderate limitation in maintaining concentration and persistence. (R. 26.) It follows that he was required to include these limitations in the hypothetical questions he posed to the VE, even if he found that they did not rise above a moderate level. *O'Connor-Spinner*, 627 F.3d at 619; *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) ("The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record.") (citations omitted).

Next, we must consider whether the ALJ adequately accounted for Claimant's limitations in maintaining concentration, persistence, and pace in his hypothetical

questions to the VE when he limited the individual to simple, routine, and repetitive tasks free of fast-paced production rate requirements, and occasional interaction with others. The Seventh Circuit has repeatedly held that an ALJ's inquiry restricting a hypothetical individual to simple, routine tasks with limited interactions with coworkers and the general public does not adequately account for an impairment in concentration. *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) (stating that, "confining the claimant to simple, routine tasks and limited interactions with others" does not "adequately capture[] temperamental deficiencies and limitations in concentration, persistence, and pace") (citations omitted); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (holding that the ALJ did not adequately account for the claimant's concentration, persistence, or pace limitations in his hypothetical which limited an individual to "simple, routine tasks that d[id] not require constant interactions with coworkers or the general public"); *see also Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (hypothetical questions limiting an individual to "unskilled" work did not account for mental impairments including difficulty with memory, concentration, and mood swings). In her brief, the Commissioner fails to acknowledge this precedent, cite any contrary authority, or explain how the hypothetical here sufficiently accounted for Claimant's limitations. *Stewart*, 561 F.3d at 685. This Court sees no reason why we should not reject the ALJ's line of questioning in light of judicial precedent. As a result of the ALJ's faulty questioning, the VE did not take into account Claimant's limitations in concentration and persistence when he suggested occupations that Claimant could perform in the national economy. Therefore, we cannot say that the ALJ supported his step five conclusion with substantial evidence when he relied on the flawed testimony of

the VE. We remand the issue to the ALJ so that he can pose questions to the VE that adequately account for all of Claimant's limitations that are supported by medical evidence.

Although Claimant limited his foregoing argument to concentration and persistence, on remand the Court notes that the Seventh Circuit has rejected hypotheticals where an ALJ fails to define "fast paced production." *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). In such situations, without a definition, it is impossible for a VE to assess whether a claimant can maintain the proposed pace. *Id.* at 815. On remand, the ALJ should also pose hypothetical questions to the VE that adequately account for Claimant's limitations in pace.

### 2.    One- or Two- Step Tasks

Similarly, Claimant also alleges that the Commissioner failed to demonstrate that he can perform jobs available in the national economy because the ALJ failed to include his limitation to simple, one to two-step tasks in the hypothetical questions he posed to the VE. (Cl.'s Br. at 6–8.) In making his argument, Claimant relies solely on the mental RFC assessment completed by Dr. Donna Hudsepth, Psy.D., where she opines that he retained "the ability to understand, remember, and carry out at least simple one/two step repetitive tasks." (R. 413.) According to Claimant, Dr. Hudspeth's evaluation supports the proposition that he is incapable of performing tasks with more than two steps. However, a plain reading of Dr. Hudspeth opinion reveals that she opined that Claimant could perform *at least* one- to two-step tasks, not that he was incapable of tasks with more steps. Without more support from his medical record regarding his allegations, Claimant has failed to persuade us that he is *limited* to one- to two- step tasks; therefore

we find it is not a mental limitation that the ALJ was required to supply to the VE in his hypothetical questions at the administrative hearing.  Accordingly, we find that the ALJ did not commit a reversible error in this regard.

Claimant also alleges that the ALJ failed to resolve inconsistencies between Dr. Hudspeth's opinion, which limited him to one to two-step tasks, and Dr. Cochran's opinion, which "merely limited [him] to simple tasks."  (Cl.'s Br. at 6–7.)  As we have previously established, Dr. Hudspeth opined that Claimant was capable of *at least* simple, one to two-step tasks, not that he was incapable of performing tasks with more steps.  This finding does not contradict Dr. Cochran's conclusion that Claimant was limited to simple tasks.  In fact, both doctors limited Claimant to simple tasks.  Thus, we find that no conflict exists between the two opinions and, despite Claimant's contentions otherwise, the ALJ could ascribe "great" weight to the findings of both doctors.

## B.  The ALJ did not violate SSR 00-4p

Next, Claimant argues that the ALJ violated SSR 00-4p when he failed to provide a reasonable explanation for the apparent conflict between the VE's testimony regarding "moderate levels of environmental irritants" and the description of the jobs the VE opined that he could perform in the DOT.  (Cl.'s Br. at 9.)

SSR 00-4p sets out two requirements that adjudicators must meet before they may rely on a VE's testimony in support of a disability determination.  SSR 00-4p, 2000 WL 1898704 ("SSR 00-4p"), at *1.  First, an ALJ has an "affirmative responsibility to ask about any possible conflicts between" a vocational expert's testimony and "the information provided in the DOT."  SSR 00-4p, 2000 WL 1898704 ("SSR 00-4p"), at *4.  An ALJ satisfies this duty if, like here, he asks the VE if his or her testimony has been

consistent with the DOT. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008); *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Second, if a VE's testimony "appears to conflict with the DOT," an ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00-4p at *4. It is at this step that Claimant alleges the ALJ erred. For the reasons that follow, we find that no apparent conflict existed between the VE's pulmonary irritant-related testimony and the DOT.

When a claimant raises an SSR 00-4p argument after the close of an evidentiary hearing, he must prove that the conflicts between the VE's testimony and the DOT were so apparent that the ALJ should have recognized them without assistance. *Overman*, 546 F.3d at 463. Despite Claimant's contentions otherwise, it is unclear that any conflict exists in the present case, let alone an apparent one. Essentially, Claimant argues that a conflict occurred between the ALJ's hypothetical question, which limited the individual to "moderate" environmental irritants, and the VE's testimony that the individual could perform work as a room cleaner, groundskeeper, and industrial cleaner because the positions only involved "occasional" exposure to environmental irritants. (Cl.'s Br. at 9.) Claimant argues that it should have been apparent to the ALJ that the VE misunderstood the difference between the qualitative term "moderate" and the quantitative term "occasional", and he should have sought explanation for the apparent conflict. This argument is unpersuasive. We find, and Claimant points to, no authority in the DOT or otherwise that supports Claimant's contentions. In fact, Claimant simply highlights a difference in terminology between the scale used to measure a claimant's environmental limitations (unlimited, avoid concentrated exposure, avoid even moderate exposure, avoid all exposure) and his or her exertional limitations (constantly,

frequently, occasionally, and none). The VE explicitly stated that the jobs he listed would include "some exposure to dust, fumes, gases, etc, but not even to a moderate level. That would be occasionally." Because no apparent conflict existed between the testimony of the VE and the DOT, the ALJ committed no error at this step when he relied on the VE's testimony.

## C. The ALJ Failed to Fully and Fairly Develop the Record

Claimant also alleges that the ALJ failed to fully and fairly develop the record in light of his *pro se* status and his diminished mental capacity. (Cl.'s Br. at 10–11.) The Commissioner argues that the ALJ was under no such duty because he obtained a valid waiver of counsel from Claimant. (Def.'s Mem. at 9–12.) The Commissioner's argument misses the mark. An ALJ has a duty to "scrupulously and conscientiously probe into, inquire of and explore for all the relevant facts" even when he has obtained a valid waiver of counsel. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) *citing Smith v. Sec'y of Health, Education, & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (citations omitted). Furthermore, "[w]hen a claimant is both unrepresented and suffers from a mental impairment . . . the ALJ's duty to carefully develop the record is even greater." *Ransom v. Bowen*, 844 F.2d 1326, 1330 n. 4 (7th Cir. 1998), *cert. denied*, 488 U.S. 969, 109 S.Ct. 499 (Mem), 102 L.Ed.2d 535 (1988).

The Seventh Circuit has held that an ALJ meets this burden when, as here, he obtains all of the medical records from a claimant's treating physicians, elicits detailed testimony from the claimant and a friend of the claimant at the hearing, and leaves the medical record open to obtain evidence that was not in the record at the time of the hearing. *Binion*, 13 F.3d at 245. However, an ALJ must still make an inquiry into a

claimant's alleged mental impairments.  *Thompson v. Sullivan*, 933 F.3d 581, 586 (7th

Cir. 1991).  Here, the ALJ elicited no testimony from Claimant or his mother regarding

his impulse control disorder or his history of learning disorder.  In light of Claimant's *pro*

*se* status and his mental limitations, we find that the ALJ failed to meet his heightened

duty to inquire into Claimant's mental limitations to fully and fairly develop the record.

*Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009) ("the ALJ in a Social Security

hearing has a duty to develop a full and fair record" and "[t]his duty is enhanced when a

claimant appears without counsel; then the ALJ must  'scrupulously and conscientiously

probe into, inquire of, and explore for all the relevant facts.'").

## D. The Appeals Council Properly Found that the Job Browser Pro Data Submitted to it by Claimant was Not "New and Material" Evidence

Upon receipt of the ALJ's denial of benefits, Claimant secured representation and

requested review of the ALJ's decision by the Appeals Council.  Along with the other

requisite materials, Claimant submitted three "Detailed Job Specialty Reports"

corresponding to the occupations the VE had testified he could perform, based on data

he collected from the software program Job Browser Pro.  (R. 303–334.)  According to

Claimant, the data available in Job Brower Pro was "new and material," and moreover,

that it contradicted the testimony of the VE, particularly because it revealed that the

groundskeeper and industrial cleaner positions require the ability to carry out "detailed"

instructions and stated that all three of the occupations listed by the VE would require

exposure to chemicals and pulmonary irritants.  (Cl.'s Br. at 12.)  Claimant alleges that

the Appeal's Council's denial of this evidence was in error because it failed to properly

apply the "new and material" evidence standards.  (Cl.'s Br. at 11–12.)

As a preliminary matter, we must first determine whether the Appeals Council found that the evidence proffered by Claimant was not "new and material," a reviewable decision, or whether the Appeals Council accepted the evidence, but ultimately concluded that it was "insufficient to require to a different result," a determination which is not subject to judicial review. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). The Seventh Circuit has determined that boilerplate language from the Appeals Council which, like here, simply states that it has considered the additional evidence and found that it did not provide a basis for changing the ALJ's decision, implies the former conclusion. As a result, we proceed "to review the 'limited question' of whether the Council . . . erroneously concluded that the newly submitted evidence was not new and material."[1] *Stepp v. Colvin*, 795 F.3d 711, 723 (7th Cir. 2015) (citation omitted).

When considering new evidence, the Appeals Council must conduct three separate inquires: (1) whether the proffered evidence is new and material; (2) if the evidence is new and material, the Appeals Council must evaluate the entire record including the new evidence; and (3) if, upon review, the Appeals Council finds that the ALJ's disability determination is contrary to the weight of the evidence in the record, it will conduct a full review of the case. *Perkins v. Chater*, 107 F.3d 1290, 1293–94 (7th Cir. 1997). Evidence is considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding," and it is considered "material" if there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered" in the first instance. *Perkins*, 107 F.3d at 1296 (citation and internal quotation marks omitted).

---

[1] In its decision, the Appeals Council stated "[w]e have concluded that the additional evidence does not provide a basis for changing the [ALJ]'s decision. (R. 2.)

Claimant argues that despite the fact that DOT (not Job Browser Pro) was in existence at the time of his hearing, it was not available to him due to his pro se status and established learning disabilities. Yet, Claimant offers no authority in support of his contention, and in light of the definition of "new" evidence, we are not persuaded by his argument alone. Therefore, we cannot grant remand for consideration of the "Detailed Specialty Job Reports." 28 U.S.C. § 405(g), *see also Buchholz v. Astrue*, No. 08-cv-4042, 2009 WL 4931393, at *12 (C.D. Ill. Dec. 15, 2009) (holding that a pro se claimant's evidence which pre-dated her evidentiary hearing was not "new," and therefore, remand under 28 U.S.C. § 405(g) was unavailable).

Moreover, the evidence submitted must be material, meaning that there was a "reasonable possibility" that the ALJ would have reached a different conclusion based on the proffered evidence. Claimant argues that this evidence is material because it directly contradicted the testimony of the VE, which formed the basis of the ALJ's step five determination. (Cl.'s Br. at 12.) We must reject his argument. In his brief, Claimant refers the DOT, but the evidence he submitted was collected from Job Browser Pro, a software product which is not included in the list of publications that are authoritative under the Social Security Regulations. 20 C.F.R. § 416.966(d). Furthermore, neither the Seventh Circuit, nor this Court, has held that the information available in Job Browser Pro outweighs the information in the DOT (an authoritative publication under the Social Security regulations) or the expertise of a VE. Therefore, we cannot say that there was a "reasonable possibility" that the ALJ would have reached a different conclusion in this case.

For the foregoing reasons, we find that the Appeals Council properly applied the "new and material" evidence standard to the case at hand. Therefore, we find no error in this regard.

## IV.  CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the final decision of the Commissioner or remand is granted and the Commissioner's motion for summary judgment is denied.

Dated:  June 9, 2017

_____
The Honorable Michael T. Mason